December 3, 14, 0763 Dwayne and Melvin Rick Sorrells v. DK Linde Construction, Inc. in the City of Macomb, N.R. East, Zibera, Providence. Good afternoon, your honors. If you may please the court, this case is the dismissal of a complaint for inverse condemnation. And the ruling was on only the 2615 motion. To treat the first issue first, we stated as whether the complaint is sufficient when viewed in a light most favorable to the plaintiff, which is of course the requirement. And I'd like for a moment to emphasize certain of the allegations which are in issue in the case. The plaintiff's alleged that surface water from these Macomb streets and the development is being channeled and directed by the streets on to plaintiff's real estate. We allege there is no natural drainage channel. We allege that there will be erosion. We allege that the discharge from the streets increased surface water drainage from unnatural accumulation, which would ordinarily percolate, and from rooftops. And importantly, in subparagraph E of paragraph 5, we allege that the drainage from the streets includes diversion of water from drainage basins that would not flow to plaintiff's land. In other words, the water is being brought across the ridge in a subdivision on to the streets in violation of one of the most sacred rules of drainage. And we allege that the increase is unreasonable and amounts, of course, to a taking. And what's your prayer for relief? I'm sorry. Your prayer for relief. Our prayer for relief is, our basic prayer for relief is, I think, the very last paragraph of the prayer, which, of course, this is an inverse condemnation case. So it's not a condemnation case yet. We're saying that they have taken an interest in this real estate without a condemnation. And paragraph 5 of our prayer for relief is for an order of mandamus requiring the city to initiate condemnation proceedings. That's what an inverse condemnation case is all about. When an entity of government takes your real estate without condemnation proceedings, without paying anything, then that is your remedy to require them to go ahead and condemn. Does that answer your question? That's what you say in the prayer for relief. Correct. Right. Correct. And that's the traditional standard way. What's the relationship between, under your theory, between obligations of the city of Macomb and the construction company? Well, at this point, there is none on the portion of the property that has been developed. The streets, as we allege in our complaint, were dedicated to the city. So at this point, the developer has nothing to do with it. The city owns and operates the streets, and we allege the operation of the streets, and therefore they're responsible for them. It's no different than any other street situation. You did sue the construction company. We have sued them as well, yes. And that action is still ongoing? Yes, it is. And you've asked for a relief against them? Yes, we have. And what kind of relief did you ask? Damages. As far as I recall, to be perfectly frank with you, I haven't looked at that part of the complaint in some time since we've been working on this for several years. In any event, the essence of our claim is that the city has taken a permanent easement through our property for intermittent drainage of surface water channeled onto plaintiff's lands by the streets, which the city owns and operates. And our pleading on this count, like any other, is to be construed in a light most favorable to plaintiff. Well-pled facts are accepted as true. I would point out that no facts were stricken as being not well-pled. And a case, as you know, should not be dismissed unless there is no set of facts that can be proved that would entitle Sarles to relief. And the final general rule is no pleading is bad in substance, which contains such information as will inform the defendant of the nature of the claim against it. Now, issue two really fits into issue one because much of the dispute is over whether or not there's a taking here. The surface water is being drained by the streets, according to the complaint, in an outlet that is not a natural outlet. And with respect to the matter of a taking, which is, as I say, much of what the dispute has been about in the briefs, I want to raise our supplemental authority. The bulk of the dispute is over the fact that this is surface water drainage. It is obviously intermittent. We do not allege or claim to allege that it is always running. And the city has relied on a couple of cases, one of them being people that's well cracked versus Roosevelt. And essentially what that case said in 1948 was, a Supreme Court case, that temporary flooding of property can never be a compensable taking. And in our brief, we urge that the Arkansas game and fish case overrule people that's well cracked versus Roosevelt. And in our motion for leave to file supplemental authority, we bring to the court Hampton versus Metropolitan Water Reclamation District, which was decided in mid-August, where they actually deal precisely with that point. And just as we have argued, the three justices of the first district held that Arkansas game and fish, which as you know, is a United States Supreme Court case, overrules cracked versus Roosevelt, which means that temporary flooding can be a compensable taking. And so far as we're concerned, we believe that that puts a large part of the city's claims in this case to rest. Because that is the major thrust of their argument. And let me just say, isn't a large part of their argument that, hey, we didn't design the streets, we didn't build the streets, we accepted the dedication, and that's not enough? Well, they're operating. They're going out there every day. Well, they were already built when the construction was done, when they were dedicated. City crews didn't go out and build or design the streets today. No, of course not. But they approved the plans and the construction of these streets. And the plan was that they were to be built and they were to be dedicated to the city. The whole plan, it shows right on the plans of Mr. Lincoln, that they are to be dedicated to the city. And once, of course, they are, then they are the city streets. Why would it make any difference whether they ask the county to build them? In our county, sometimes the county does work for the village. Or in eminent domain, we see cases where the state builds streets and roads, but they are dedicated to the city and the city takes care of it. The fact is the streets are there. They own them. They're doing damage. They are taking our property. And they are operating. But your allegations go to the way they were built and these drains, as opposed to the way the city seems to be managing them, that there's not something the city's proactively doing or not, that they should be doing on that street that would change things, for example, right? What I get from your complaint is it's the design of the street, the way they're built and these drains where they are, but not something about the way the city chooses to maintain or not maintain them. Is that fair that that's... You're not complaining about... as opposed to the way they were designed and built originally. I'm sorry. Our claim is that the streets are channeling the water onto us and the city owns and operates the streets. It's just that simple. It would be no different than if they built the street to the edge of our property and then used, just drove across our land. What's the difference? This just happens to be water. They would be taking our land for a street. The thing is, as we all recall from our real estate law, the right to real estate is a bundle of rights. It's many different things. One of the rights we have is to not have their water come down our drainage way and raise the level of our dam within danger of overflowing or to raise the level of our lake to a point where it's in danger of going into the kitchen of the residents. This problem of channeling the water, we allege, is caused by the streets. We may not be able to prove that. We didn't plead the evidence here in this complaint. I think we can. But the point is that the streets are causing the problem and the city owns the streets and by continuing to operate and maintain them in the manner in which they are now doing, they are physically invading our property with water that impairs its usefulness and value and what have you. Mr. Howard, do you have any cases that reflect the kind of passive nature of the municipality here or any governmental entity? That reflect the passive nature? The passive nature of what the city is doing here. I mean, most of the cases, all of the cases you cited reflect some kind of an action other than... Inverse confirmation cases are very rare to begin with, I think. There is a case which the defendant cited, which I think was the... may have been the state of Washington, where in that state, in order to have any recourse, you had to show that this was intentional. One case, one state. There is no requirement of active intent on the part of the city for this situation. If the streets are causing water to frequently cross your front yard, placing the residents or other appurtenances in danger, then they have taken, or they are in the process of taking, the right to do that. And that's part of your property right. In this case, when you are looking at the Arkansas case for guidance and the case from the first district, the U.S. Supreme Court case dealt with government-induced flood. And when they looked at factors, they looked at the intended or foreseeable result of authorized government action. Now, I'll follow up on Justice Smith's question and Justice Linton's question. Here, you're saying that accepting the streets and allowing the streets to be there without any modification, I suppose you're arguing that's government-induced and that is a foreseeable result of authorized government action. Because once they accept the streets and don't modify the way the streets are constructed or laid out, it causes the flooding. Now, the counter-argument I guess to that is, no, that's not government-induced. The streets were built by this developer, not by the government, they just took it. And it was after the fact, and the streets as developed by the developer caused this problem. So how do you get the governmental body involved? I suppose that's the counter-argument, right? Sure. So, very simply, it doesn't make any sense to me whether they bought these from General Electric or whether they were dedicated to the city by the developer. As we know, cities are motivated by one thing in these matters. What is that? Increasing their tax base. And so, with open arms, the developer comes to the city. The city is involved from day one in the design of the development, in approval of the plans for the development, including the street, with the intention that they will own the street and other, sometimes other things as well, and operate them. And so, I don't find how they got the streets to be that significant. What if this developer built a culvert, a 12-inch culvert from north to south? And right here is Mr. and Mrs. Sorrell's, right on the south end, a 12-incher. And the ridge we're talking about goes through like that. And this 12-inch pipe has holes in it, so surface water percolates down into it. And the pipe takes water from another drainage basin, which under drainage law you cannot do, and takes it down that pipe all the way to Mr. Sorrell's, and of course, as well as other water, perhaps along the street, or however you want to imagine your hypothetical. And then the city ends up owning the pipe, and they continue to operate that pipe. And the most evil thing they're doing is moving water across the ridge from the northern drainage basin, which would always go the other way. In addition, they're moving water in this pipe, surface water drainage, stormwater system you might call it, onto the Sorrell's. So the city with impunity may accept the dedication of that pipe from the developer, and ever after overflow Mr. Sorrell's property. What's the relationship between your relief against the contractor, construction people, and the governmental body? Well, first of all... What's your prayer for relief against the construction people? First of all, what the city has is forever. The city has taken part of our title. If you were a title examiner going out to look at this, and you were aware of it, you would have to mention it in the title commitment. You would have to say, oh, well, yes, there's nothing recorded, but there's a person in possession of certain rights with respect to Mr. Sorrell's real estate, and that is the city of Colm apparently has the right to dump this water from their streets onto Sorrell's. The relationship, to get to your question, between the city and the developer is, for the period the developer was operating it, as far as I'm concerned, at some point the city took over the operation and maintenance of the streets. The developer is in there. So this inverse condemnation that you're seeking, what's your measure of damage for relief? Well, the measure would... Because you're saying it's like an easement of water flow? Yes, of course, yes. Precisely. So how do you measure that? Well, it would be established, as in all eminent domain cases, by expert appraisers who would value the land before the taking of the right to put the water through here and the reduction in value afterwards. And in addition. Are you seeking, let me, this is a real straightforward question, are you seeking just money damages for the taking or money damages and remediation of the problem? Well, what we are seeking, the main matter that we are seeking is, it's in the appendix, Your Honor, in the last page of the complaint, item H. An order ordering the city to bring a condemnation action to get this right. A condemnation action results in money damages. Well, as Justice Carter inquired, the measure of damages for the easement itself, for where the water is going, would be the value of the land. I get all that. My question is, are you also seeking a remediation? In other words, order them to do something so this water doesn't come this way anymore. We have asked, of course, for the inverse condemnation. Is that it? Which is money damages. That's what you get in a condemnation. Yes, but we would also get damages to land not taken. You see, this is a... But there are money damages. You're not seeking injunctive relief. Not in the count for the inverse condemnation. Thank you. Any other questions? I don't believe so. Thank you, Mr. Tucker. Thank you. Mr. Radia. May it please the Court. My name is Behrood Radia, and I represent the city of Macomb, which is the appellee and defendant in this case. And just to make a correction, the Lindy construction, the other defendant, is not an appellee in this proceeding. I just wanted to focus on two of the arguments that we made in our briefs. Some of those questions that you've been asking pertain to them. One is that before we get into whether there was flooding or not, we need to examine the nature of the action that the city took in this case. And then the other argument I want to focus on is causation. And the reason we need to step back and look at what the action the government took in the first place, which is alleged to have given rise to the injury, is that we need to distinguish between a tort and a taking. And in this case, there are only two actions that the city has been alleged to take. The first one was that they approved the plans and designs and constructions and gave a permit to the private developer to make this residential development. For that, it appears that council has conceded that you cannot have a takings claim based merely on a city granting approval for a development. In any event, we've cited a case out of Washington, the Supreme Court, which also held in a case that mere approval doesn't amount to the kind of substantial action that gives rise to a takings claim. We also in Illinois have a Tort Immunity Act. That case, was that about roads? The Phillips case, Your Honor? Yeah, was that about roads? In that, it was roads and the drainage system. And the court looked at three bases from below, one of which was, can a city be liable for takings merely for the approval? And then the next question they asked is, well, how about if they accept ownership of the streets and the drainage? And the answer is no, which brings me to the second question, which we've been talking about, the second act that the government took, which is accepting these streets. And here's, we need to look at the allegations that they've made pertaining to the streets and the streets' interrelation within that development. The first thing is, unlike a lot of cases which plaintiffs cited in their briefs, this street, I mean, these streets do not go through the plaintiff's land. They do not abut the plaintiff's land. They don't share a common border. And they were not designed, not constructed by the city. The city accepts these streets inside such developments for the purpose of maintenance, and it's basically an ordinance. It's in their code. Just because they've accepted streets that have been constructed under applicable regulations, IDOT regulations and so on, and just assuming it for purpose of maintaining them, we haven't found any case that says that such action rises to the level where there is either intent or foreseeability that this could cause some sort of flooding down the line. Remember, these streets are not even abutting the plaintiff's land. The key thing that we need to look at is... The reason I'm wondering about this is because, first off, when they accept the streets, and that's one of the issues in the U.S. Supreme Court's decision, is whether it's government-induced.  So if there's a relationship between the flooding on the property and the streets, some kind of causal relationship, the way that it's designed and maintained, arguably that's government-induced because the city, once they accepted the street, and this was a 615 motion, so we're not dealing with the facts of that. This was a 615 motion that was granted. If there's evidence that maintaining the streets the way they are causes flooding on this other property, that would appear to arguably checkmark the government-induced flooding. And then when you look at the duration, you've got the Arkansas case that says it doesn't have to be permanent. Those are sometimes the duration, maybe one time's not enough, but some other times, I mean, they're sort of unclear about that in the Arkansas case, but we know that temporary duration is good enough for a taking. And then when you look at the intended or foreseeable, not so much the intended result, but in this case, it would appear to me, it would be more, is it a foreseeable result of the way the streets maintain that there's flooding? And I suppose that's about evidence of how the street's causing any flooding to this other person's property, even though it's not abutting, even though it's not adjoining. And that seems to be when you've got this U.S. Supreme Court position on taking, that was a game-changer compared to the old law, correct? Your Honor, it's a game-changer in terms of only one aspect, which is not the two things that, there's one aspect we raised in our briefs and has been briefed through these motions to dismiss, which is, yes, we had argued that under Pratt, you need to have permanency. And sure, Arkansas, the Supreme Court seems to have suggested that that's not a categorical rule or exemption, and it has to go on a case-by-case basis. But to answer your question, even if we say that, well, the streets have been accepted, now it's government-owned, and if they're causing the injury, then the government-induced portion of that seems to be checked. I'd answer respectfully, no, because, and you're right, this is a 2650 motion, but we need to only look at all these pleadings that have been filed by the plaintiffs to see that it is not being alleged that the streets alone are causing this. You have a development, and it's the mere existence of the development, number one, because you have a lot of structures now that are not allowing water to percolate down naturally. You've got roofs, you've got parkways, you've got streets, you've got other improvements, driveways and so on, and the plaintiffs have always alleged from the first verified complaint that they filed against the developer, in which the city wasn't even named yet, that way back in 97, and the initial complaint was filed in 2007, way back in 97, the owner of this land, which has the development, installed a basin, a stormwater basin, at the south end, and changed the natural flow of the water from the north, which was away from the plaintiff's property, southwards towards the plaintiff's property. And if you look at all their pleadings subsequent, you'll see that they say that all the waters, surface waters from this development, including the streets, are being drained, are being channeled onto these two stormwater retention basins, and then through the drainage system, they are being discharged onto the plaintiff's property. So, the reason why just the mere accepting of these streets doesn't rise in this case, is because you're alleging that the streets are one part of an entire private development, which water from all of this is being channeled, and counsel said, well, the streets are channeling. I respectfully disagree, because, like I said, the streets do not go even to the line that marks the boundary between these two properties. The streets, if you look at a Google, you can look at a Google map, you can look at the plat that is attached to one of the affidavits which is in the record, you'll see these streets do not go to the boundary. I understand that, but in this complaint, you know, if the streets are a contributing factor, would that be an appropriate 615 motion to dismiss? Because the pleading is alleging that, you know, based on the development and the phases, is the allegation, the water from the development, including from the streets, is being channeled and directed by the streets, and is discharged, you know, from their detention basins onto the plaintiff's land. So in other words, the streets are part of it, not the only part, only part of it, that's the, I'm talking about, that's the allegation, and that wasn't part of the natural drainage beforehand, and so, but the discharge from the streets includes increased surface water drainage, et cetera, et cetera, and they're claiming that wasn't the natural,  the residential facilities, the streets, the sidewalks, all that kind of stuff, as you say. So they're not saying it's the sole cause or the only cause, they're saying it's part of the problem, the streets. Right, but, which brings me to actually my second point, which we've argued in the briefs as well, which is causation is, and this is explained in the Crispin case that we cited, the Seventh Circuit case, the Sanguinetti case, that's a Supreme Court case, which even Arkansas game refers to the Sanguinetti case and the holding there on basis of foreseeability and causation, and this is where the Seventh Circuit, to quote, says, in a takings case you need to have direct damages as opposed to consequential damages. So you can, like you said, the streets are a contributing factor, they're consequential damages, and you have a tort action for that. When you're talking about takings, they say- Is it consequential or is it direct? Well- There could be multiple direct actions, is that right? So here's how they define it, Justice. They say direct damages result from government action without intervention of any intermediate controlling or self-efficient cause, and then consequential, they say, not produced without the concurrence of some other event attributable to the same origin or cause. So what we're submitting is if you look at the entire allegations as a whole in these pleadings, you get the idea that you're talking about a defective drainage, which is the main issue here, not just the fact that you've got a private development and the mere existence of a private development and streets, of course, will add to the surface water, no denying that, that would have percolated. But it's not just the adding of the surface water, it's that you're not properly managing it so that the neighboring property is not burdened by it. See, what I'm struggling with is, again, this is a 615 motion. What you're talking about, isn't that more like a summary judgment motion to say, look, under our definitions, once you see what they've got, we're entitled to summary judgment because it's, like you say, consequential, not direct. Isn't that more of what, rather than whether or not they've pledged something good enough this past semester under 615? Well, Judge, I would disagree with you in this particular case only because the allegations here from the initial complaints are very clear. And if you look at it, Judge, there has been no case that, in fact, the couple of cases that we cited from Washington, they've looked at the same question, that, by the way, now that you've assumed it and it's a contributing factor on this, but they say no because a takings is different from a tort, and just because the streets are adding to the water, when you have allegations that clearly say that the flow of the water, the natural, the key thing here is natural flow of the water was flowing northwards, away from the property of the plaintiffs. Back in 97, something was done, not by the city, that already altered the flow. Once you've altered the flow and now you've added all these other improvements and you're not draining it out, I don't see how this complaint, and you can see that the trial court has allowed plaintiffs to plead and replead. What's the third complaint you're looking at? The third complaint. I think that the conclusion the trial court reached is based on all the case law that we're looking at. I think the conclusion is that the fact that you're not able to allege that the government's action, which is the acceptance of the ownership of the streets, and you're not able to show that that's the proximate cause, you're not going to be able to show it in this kind of private development, it's impossible. Can I ask one quick question here? And that is, anywhere in any of the plaintiff's complaints, are there any requests for injunctive relief? Your Honor, I looked, while you were asking those questions, I looked at the plaintiff's initial relief. The plaintiffs have sought two types of relief from the private developer. Money damages and an injunction to stop them from unreasonably increasing the flow of the water and to install proper drainage or to fix whatever is the problem with the drainage, which again shows you what the real cause of this is not just that water is being added by the streets and that's another improvement, it's that the water that is not being drained out properly and they're asking for that relief there. Against the city, they have asked for damages and a writ of mandamus to compel the initiation of condemnation proceedings to decide those damages. So those are the two reliefs. And the... You know, the cases from Washington are from the late 90s and the Arkansas case is 2012. Your Honor, I think the Arkansas case, if you look at it, it's clear that there was no issue whatsoever of the two things we're talking about. Number one, government action. Like you pointed out, it's flat out a government is releasing water from a dam. Okay, so that's just government-induced flooding. No question about it. Number two, causation. No question that the flooding was the only cause was that the water was being released. All that they looked at was can you have a taking of temporal duration if it's not permanent, if it's recurring but it happens temporarily. That's all. So I don't think that that would affect this case. In fact, if you look at the Dunn case out of Oregon Supreme Court, it's a 2014 case. It talks a lot about the kind of causation that you need to be looking at. It's basically talking about approximate cause. It was not a case that we have, like the Washington cases and this one, which involves surface water overflow. The Dunn case involved a sewage issue. But the principle is the same, that before you reach this thing about what Arkansas reached, you need to look at the nature of the action, need to look at causation, and then distinguish between the tort and the takings. There's also another case that we have cited out of Nebraska, which was a post-Arkansas case. I'm sorry, yes, it was the Henderson case. And that one also looks at trying to first as a threshold issue, first we need to examine if the nature of the action is of the type that courts have recognized as something that can underpin a takings action. So for these reasons and for the reasons set forth in the briefs and the record as a whole, I would ask that the court affirm the trial court's decision to dismiss the inverse condemnation claim against the city with prejudice. Thank you. Thank you, Mr. Ratigan. Mr. Tucker. Thank you, Mr. Roberto. In my brief, we have discussed and distinguished each and every one of these out-of-state cases. Now, if you want to read the Dunn case, maybe you've already read it, I invite you to do it. It involves damage to a residence by a city crew who were jetting the sewer in front of the house and blew stuff up into the house. Strangely, and what does that have to do with our case here today? He talks about proximate cause in that case, I guess you probably would, but it has nothing to do with our case today. Counsel talks about the Henderson case. Strangely enough, that's another sewer jetting case. The guys are out working on the sewer. They're jetting the sewer, which is running high-pressure water through it, and they do damage to the house. It's not an inverse condemnation case in any respect, and we don't see that it has anything to do with this case. If those courts said anything about inverse condemnation, it is most definitely dicta. You have asked about the pair. I'm sorry, I stumbled around on it, but it really isn't for general damages. Appendix 10, which is page 6 of the amended complaint, we ask in paragraph 8, for a sum of money sufficient to pay the cost of improvements and enhancement sufficient to compensate plaintiffs for the cost of protecting their lake, dam, overflow residence, and other property. Item B, for a sum of money to compensate plaintiffs for physical damages already incurred. For a sum of money for the damage to land not taken. We didn't get quite to this, but Mr. Sorrell's property is development property also, and this water is running right down through it. For the value of the rights taken, including the overflow easements, well, that means the value of the easement, what would it sell for? And that's an appraisal before and after the existence of the easement. And so it isn't exactly that we ask for general damages. In your complaint, you have count 4 and count 4. You have two counts 4s. You have a prayer for relief at the end of it all. There's no prayer for relief at the count 4, phase 1 and 2. The prayer for relief is after the count 4 style inverse condemnation.  That applies to both count 4 of phase 1 and 2 and count 4 inverse condemnation. Is that the way it works, or what? Well, in the introduction, that makes five. You say count 4, City of Macomb, phases 1 and 2, background facts, and you set that out. The phase 2 are designed, and the approval of construction has failed to follow after drainage. And then you've got count 4, City of Macomb, claim for inverse condemnation, and that you repeat the allocations of 1 and 7 of the background facts. I mean, are those two separate claims, or one? No, it's just one claim, and one prayer. What is it about the streets that causes this flood? Well, the street is moving the water. Well, every street moves water because it's every paved street, right? Sure. And it would be inappropriate for the street to move water onto your property, you know, if you were the landowner. It is that the streets are channeling the water, and it ultimately ends up in Mr. Sorrell's property. So is there something they could do to these streets to make that go away? I would say probably not. We'd be, of course, delighted to hear you propose that. I want to mention, but I would say not. Council, thank you. Council mentioned the Phillips case. And we did a lot of work distinguishing these cases. And I don't believe the Phillips case says what the city claims it says in their brief. And we find that at page 4 of our reply brief. And the ultimate ruling of the Phillips case was to reverse the summary judgment against the plaintiff, saying they had raised a material issue of fact, and they concluded. Here's what they concluded, which is entirely different than what is argued. A county which allows a private developer to construct a drainage facility on public land or land subject to public control, which acts to channel surface water onto adjacent property, may be liable in inverse combination if the plaintiff can prove liability under existing law regarding dispersal of surface water, et cetera. So that's the Phillips case. That's what we find from it. Well, what about the argument of your opponent that the difference between direct and consequential, and you certainly say in count four, phase one and two part of your complaint, that the water from the development, including the streets, you know, it's partly streets, partly, is being channeled directly by said streets, and it is unreasonably discharged into two storm water detention bases. Okay, at that point, you know, so you're talking about the storm water detention basins, and their argument is that's the direct cause of this, and the streets are just consequential, and there lies in the difference about whether or not you can do inverse condemnation. Well, we think that's a fallacious argument. Why? You could argue that if it didn't rain, there wouldn't be any problem. The problem is that the streets are channeling the water. This is not a tort case. I think maybe I heard counsel say something about tort at the beginning of this, but the direct or consequential damages has nothing to do with this. They are taking our land. They are running water over it, no different than if they had part of their motorcycle track, the city owns, come around through our land. They are taking our land. Something I want to do. But the issue is something that is not, and that seems to, you know, you've got a flooding problem, it's not. Who are they? Is the city flooding your property, or did the developer flood your property? Well, if you have a drainage problem on the farm, and Smith owns the adjacent property, and there's a ditch that goes down through you and Smith, and Smith builds a big development 70 feet to the east to handle his water, and he runs that water onto you 70 feet to the east, then he sells it to Jones. I would sue Jones. You know, it's, he's the dominant tenement. And it's a similar thing here. Something I want to emphasize under the complaint is, I'm requesting additional minutes, you know. I answer a lot of questions. Are you still answering, Mr. Smith? I am not. Well, hurry up. Quick point. What's going to happen if this is reversed? Isn't that a condemnation has to be filed the next day? What's going to happen is the case will go back, and there will be a hearing whether or not the condemnation has to be filed. You're not really making that decision. You're just saying whether or not we have a complaint sufficient to get that hearing. And so if there's a reversal, the trial judge will have a hearing on whether or not they have to file the condemnation. Thank you. Thank you both for your argument today. We will take this matter under advisement, get back to you with a written disposition. And we'll now recess until tomorrow at 9 o'clock. We'll resume at that time. All right. This court now stands in recess.